WO         IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| ROBERT B. McGAREY and AMES S. McGAREY, | ) ) | |
| | ) | |
| Debtors, | ) | |
| _____ | ) | |
| | ) | |
| ROBERT B. McGAREY and AMES S. McGAREY, | ) ) | |
| | ) | No. 2:14-cv-1979-HRH |
| Appellants, | ) | |
| | ) | Br. No. 2:13-bk-15074-BKM |
| vs. | ) | |
| | ) | |
| MIDFIRST BANK, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

O R D E R

Appellants appeal the bankruptcy court's order denying their motion to disallow MidFirst Bank's § 1111(b) election. Oral argument was requested and has been heard.

Background

On October 25, 2010, appellee MidFirst Bank obtained a judgment against appellants Robert B. McGarey and Ames S. McGarey (herein referred to as the "debtors") from the

-1-

Superior Court of Arizona, Maricopa County, in the amount of $2,335,638.44. The judgment was recorded on November 17, 2010, thereby creating a judgment lien. Under Arizona law, MidFirst's judgment lien attached to all of debtors' real property located in Maricopa County. A.R.S. § 33-964. Debtors own three real properties in Maricopa County: 1) their residence;[1] 2) a rental property located at 3049 N. 62nd St., Scottsdale, Arizona; and 3) an office building located at 7527 East First Street, Scottsdale, Arizona.

MidFirst also obtained and perfected Charging Orders against debtors' rights to distributions from several closely-held entities in which debtors own an interest. These entities are SWRG Property Services, LLC; 2730 Scottsdale Partners, LLC; 7th & Thomas Partners, LLC; 5th & McDowell Partners, LLC; Main St. Ventures, LLC; and MEV D-102 Partners, LLC. MidFirst also has a garnishment lien on Southwest Retail Group, Inc., a company in which debtors own 100% of the stock.

On August 29, 2013, debtors filed a voluntary Chapter 11 petition. MidFirst timely filed a proof of claim in the amount of $2,335,638.44.[2] MidFirst's proof of claim was not objected to and thus was deemed allowed.

---

[1] The McGareys' residence is not at issue here because the bankruptcy court voided MidFirst's lien on the residence on April 30, 2014. Docket No. 118 in Case No. 2:13-bk-15074-BKM.

[2] Appellant's [sic] Excerpts of Record at 58, Docket No. 12.

On December 27, 2013, debtors filed their proposed Plan of Reorganization and their Disclosure Statement in support of the proposed plan. Debtors valued the rental property at $145,000.00 but this property is encumbered with a secured debt senior to MidFirst's lien in the amount of $177,300.00.[3] The office building was valued at $480,000.00 but this property is encumbered by a secured debt senior to MidFirst's lien in the amount of $440,486.00.[4]

In the disclosure statement, debtors discussed MidFirst's potential deficiency claim. Debtors stated that MidFirst's

> security is any equity in real property owned in the Debtors' name in Maricopa County, and whatever value its charging orders may have. Debtors believe that is somewhere around $68,500.... If that is the case, or whatever the case is with regard to MidFirst's allowed secured claim, the balance of any allowed claim will be unsecured.[5]

As for the secured portion of MidFirst's claim, debtors proposed to "make annual interest only payments at the Plan Rate for 24 months from the Effective Date. Thereafter, the allowed secured claim shall be amortized over 30 years from the Effective Date, with a

---

[3]Appellant's [sic] Excerpts of Record at 24, Docket No. 12.

[4]Appellant's [sic] Excerpts of Record at 24, Docket No. 12.

[5]Appellant's [sic] Excerpts of Record at 10, Docket No. 12 (footnote omitted).

maturity of ten years from the Effective Date."[6]  As for unsecured claims, which included $12,000 in credit card debt and the portion of MidFirst's claim that was unsecured, debtors proposed to pay $2,500 each year for 5 years, with the funds to be "distributed pro rata ... in full satisfaction" of the unsecured claims.[7]

MidFirst objected to the Disclosure Statement for "failing to provide adequate information about, among other things, the secured status and treatment of creditors' claims."[8] In particular, MidFirst objected because "[t]he Disclosure Statement provides that MidFirst Bank has a secured claim in the amount of $68,500 but fails to identify the source of this opinion or provide any detail or support for it."[9]

On February 12, 2014, MidFirst and debtors entered into a stipulation regarding MidFirst's objection to the Disclosure Statement.[10] MidFirst and debtors "stipulate[d] that the equity in the property subject to the MidFirst Judgment Lien is $80,000.00.  Anything contained in the Disclosure Statement ... or the Plan ... to the contrary is or shall be

---

[6]Appellant's [sic] Excerpts of Record at 16-17, Docket No. 12.

[7]Appellant's [sic] Excerpts of Record at 17, Docket No. 12.

[8]Appellant's [sic] Excerpts of Record at 26, Docket No. 12.

[9]Appellant's [sic] Excerpts of Record at 26, Docket No. 12.

[10]Appellant's [sic] Excerpts of Record at 33, Docket No. 12.

amended."[11]  As a result of this stipulation, MidFirst withdrew its objection to debtors' disclosure statement.[12]

On February 18, 2014, MidFirst filed a Notice of Election Pursuant to 11 U.S.C. § 1111(b).[13]

On March 17, 2014, debtors filed a motion in which they asked the bankruptcy court to determine that "under 11 U.S.C. § 506, ... the lien of MidFirst does not attach to the real property owned by the Debtors and that the interests of the Debtors in the closely-held entities is the collateral supporting MidFirst's lien."[14]  Under Section 506(a), a secured claim is one "secured by a lien on property in which the estate has an interest...."  11 U.S.C. § 506(a).  Debtors argued that because their interests in the real property at issue had no value over and above the consensual liens on the property, it would be appropriate for the bankruptcy court to determine that the collateral supporting MidFirst's lien was limited

---

[11] Appellant's [sic] Excerpts of Record at 33, Docket No. 12.

[12] Appellant's [sic] Excerpts of Record at 33, Docket No. 12.  The parties now disagree as to the meaning of this stipulation.  Debtors take the position that the $80,000 represented the value MidFirst has in both the real property and the charging orders.  MidFirst Bank's Supplemental Excerpts of Record at 97, Docket No. 17-2.  MidFirst takes the position that the stipulation only covers the value of the real property.  Id.

[13] Appellant's [sic] Excerpts of Record at 35, Docket No. 12.

[14] Appellant's [sic] Excerpts of Record at 43, Docket No. 12.

to debtors' interests in the closely-held business entities.[15] The bankruptcy court denied the motion because "[b]ased upon MidFirst's § 1111(b) election, the debtors have no basis to defeat the rights of MidFirst under § 506(a)."[16] Debtors did not appeal this decision by the bankruptcy court.

On May 6, 2014, debtors filed a Motion to Disallow MidFirst's § 1111(b) Election.[17] Debtors argued that MidFirst's § 1111(b) election should be disallowed because the value of the property securing MidFirst's claim was inconsequential. Debtors urged the bankruptcy court to adopt the reasoning of In re Wandler, 77 B.R. 728, 733 (Bankr. D.N.D. 1987), which held that inconsequential value does not mean "no value" but that collateral worth approximately $15,000 was "inconsequential" when compared to a total claim of $390,000.00 because it represented only "approximately 4% of the total claim." The bankruptcy court agreed with the Wandler court that "inconsequential value" did not mean "no value, holding that "inconsequential value" meant "insignificant" value.[18] But, the bankruptcy court declined to follow the Wandler court's method for determining whether the value of the lien was "insignificant" or "inconsequential." The bankruptcy

---

[15]Appellant's [sic] Excerpts of Record at 42, Docket No. 12.

[16]Minute Entry at 1, Docket No. 124 in Case No. 2:13-bk-15074-BKM.

[17]Appellant's [sic] Excerpts of Record at 48, Docket No. 12.

[18]Appellant's [sic] Excerpts of Record at 65, Docket No. 12.

court stated that it was "not convinced ... that the right analysis is that we get to compare whether the amount is significant, to figure out whether it's significant that we compare the value of the collateral to the claim."[19] The bankruptcy court decided not "to follow the [Wandler] case" and thus the bankruptcy court denied debtors' motion to disallow MidFirst's § 1111(b) election.[20]

This appeal followed. Although debtors list eight issues on appeal, there is really only one issue here and that is whether "inconsequential value" for purposes of a § 1111(b) election should be determined by comparing the value of the collateral to the value of the secured creditor's total claim.

## Standard of Review

"Findings of fact are reviewed under the clearly erroneous standard of review and legal conclusions are reviewed de novo." In re Mortgage Store, Inc., 773 F.3d 990, 994 (9th Cir. 2014). "The determination of value is a factual finding[.]" In re Tuma, 916 F.2d 488,

---

[19]Appellant's [sic] Excerpts of Record at 65-66, Docket No. 12.

[20]Appellant's [sic] Excerpts of Record at 66, Docket No. 12. MidFirst contends that the bankruptcy court, by denying debtors' motion, implicitly decided that the value of the property securing its lien was not inconsequential. However, in order to make that implicit finding, the bankruptcy court would have had to decide the value of the property securing MidFirst's lien, and the bankruptcy court expressly stated at the hearing on debtors' motion that it was not going to decide the value of the collateral. MidFirst Bank's Supplemental Excerpts of Record at 120, Docket No. 17-2 (The bankruptcy court stated that "I'm not going to decide today ... what constitutes the $80,000 in collateral.... I'm not going to decide that today. We can bring that up on another day.").

491 (9th Cir. 1990). The selection of a valuation method is a question of law. Alberts v. HCA, Inc., 496 B.R. 1, 14 n.6 (D.D.C. 2103).

Discussion

MidFirst is an undersecured creditor. "Under § 506(a), the total claim of an undersecured creditor is bifurcated into two claims, a secured claim equal to the value of the collateral and an unsecured claim equal to the remainder of the obligation owing to the creditor as of the petition date." In re Weinstein, 227 B.R. 284, 291-92 (9th Cir. BAP 1998) (footnote omitted). The undersecured creditor's lien is stripped "from its unsecured claim, in effect reducing the creditor's lien to the present value of the collateral." Id. at 292. However, "Section 1111(b) permits an undersecured creditor to elect to have its entire claim treated as secured." Tuma, 916 F.2d at 491. "When an undersecured creditor makes the § 1111(b)(2) election, ..., the creditor foregoes its unsecured, deficiency claim." Weinstein, 227 B.R. at 293. "Instead, its total claim is treated as the allowed secured claim for purposes of the Chapter 11 plan confirmation process." Id. "[W]hen an undersecured creditor makes the § 1111(b)(2) election, its allowed secured claim is equal to its total claim rather than the value of the collateral." Id. at 294. "In order for a reorganization plan to now comply with the cram down requirements of § 1129(b)(2)(A)(i)(I),[21] the electing creditor

---

[21] "Debtors use § 1129(b)(2) to 'cram down' a creditor class ... when it objects to its treatment under a reorganization plan." Weinstein, 227 B.R. at 293. "That section permits the bankruptcy court to confirm a reorganization plan over the secured creditor's objection (continued...)

must retain a lien equal to the total amount of its claim. The lien is not stripped down by § 506(d)." Id.

"The choice of whether a secured claim will be treated as fully secured under section 1111(b)(2) belongs solely to the creditor." Matter of Coventry Commons Associates, 155 B.R. 446, 450 (E.D. Mich. 1993). The undersecured creditor may do nothing, in which case its allowed claim is bifurcated into secured and unsecured portions by operation of § 506(a). Or, the undersecured creditor may make the § 1111(b) election and, if so, the entire amount of its allowed claim will be treated as fully secured.

"However, under § 1111(b)(1)(B)(i), a creditor may not elect to have its claims treated as secured if 'the interest on account of such claims of the holders of such claims in such property is of inconsequential value.'" Tuma, 916 F.2d at 491. The Bankruptcy Code does not provide a definition of "inconsequential value." In re Rosage, 82 B.R. 389, 390 (Bankr. W.D. Pa. 1987). Debtors argue that "inconsequential value" cannot mean "no value", even though some courts have so held. See, e.g., In re Baxley, 72 B.R. 195, 198 (Bankr. D.S.C. 1986) ("property securing the claim must be of no value for a creditor to be ineligible to make the election under § 1111(b)(2)"). Rather, debtors argue that courts which have held that "inconsequential value" means something other than "no value" have

---

[21](...continued)
if one of the three conditions of § 1129(b)(2)(A) is met." Id.

correctly decided the issue. See, e.g., Wandler, 77 B.R. at 733 (holding that inconsequential value does not mean "no value").

If "inconsequential value" meant "no value", there would be no doubt that MidFirst would have been entitled to make a § 1111(b) election. The parties stipulated that MidFirst's collateral was worth at least $80,000. But, the issue here is not whether "inconsequential value" meant "no value", but rather how is inconsequential value to be determined, for purposes of § 1111(b), if it means "insignificant value" as the bankruptcy court held.

Debtors urged the bankruptcy court to follow the approach that was used by the Wandler court. "To determine "inconsequential value," the Wandler court compared the lien value to the total amount of the creditor's claim. Wandler, 77 B.R. at 733. Debtors argue that the bankruptcy court should have adopted this approach because it is the most logical.

Debtors first argue that the Wandler analysis avoids strange results, such as those that will occur here if MidFirst is allowed to make a § 1111(b) election. Debtors argue that a § 1111(b) election must be read in the context of plan confirmation under § 1129. Debtors point out that § 1111(b) was enacted to avoid a secured creditor's claim being stripped down in a plan of reorganization solely for the benefit of the debtor. In order to confirm a plan under § 1129(b) without creditor approval, the bankruptcy court has to consider

whether the plan "is fair and equitable...." Great Western Bank v. Sierra Woods Group, 953 F.2d 1174, 1176 (9th Cir. 1992). "The 'fair and equitable' condition includes the requirement that the holder of a secured claim receive 'deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.'" Id. (quoting 11 U.S.C. § 1129(b)(2)(A)(i)(II)). Debtors argue that combining a § 1129(b) cram-down analysis with the § 1111(b) election requires a comparison of claim and lien values because otherwise the result of the election is absurd. Debtors contend that if the value of the property securing MidFirst's lien is not compared to the total amount of MidFirst's claim, the plan would have debtors paying MidFirst's secured claim for over more than 100 years. Debtors argue that focusing on the effect a secured creditor's § 1111(b) election has on confirmation reinforces the statutory purpose of § 1111(b) by barring election for holders of liens of insignificant or inconsequential value, while allowing holders of valuable liens to make the election and ride through confirmation. Thus, debtors insist that § 1111(b) and the confirmation standards in § 1129 are inextricably linked and that the Wandler approach takes this into account by ensuring that a § 1111(b) election does not result in an unconfirmable plan.

Debtors next argue that the approach used by courts such as Rosage are simply off the mark. In determining "inconsequential value" for the purposes of § 1111(b), the Rosage

court "focus[ed] on the value of the property to which the lien attaches, not on the total claim." Rosage, 82 B.R. at 390. Debtors argue that there are several problems with this analysis. First, they argue that § 1111(b) has nothing to do with determining the amount of a creditor's secured claim. Debtors point out that § 1111(b)(1)(A) begins: "A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502..." Thus, debtors contend that a court must conduct an analysis under §§ 502 and 506 in order to determine the amount of the creditor's secured claim. Second, debtors argue that the Rosage court used the wrong statutory standard because it stated that if the property securing the creditor's lien had "no market value", then it had inconsequential value. But, as debtors have argued above, "inconsequential value" does not mean "no value." Third, debtors argue that the Rosage court improperly shifted the "inconsequential value" characteristic from the secured creditor's lien to the debtor's property. Debtors contend that the § 1111(b) election expressly refers to the secured creditor's liens and claims, not the value of the debtor's property. Debtors argue that election is unavailable when "the interest on account of such claims ... is of inconsequential value," not when the estate property securing the claim is of inconsequential value. Debtors point out that the Bankruptcy Code already deals with estate property that has inconsequential value in § 554(a), which provides that "the trustee may abandon any property of the estate ... that is of inconsequential value and benefit to the estate." Fourth, debtors argue that the statutory

language of § 1111(b) reinforces that the comparison for inconsequential value purposes should be between the lien's value and the secured creditor's total claim amount. Debtors point out that § 1111(b)(1)(B) reads, in pertinent part: "A class of claims may not elect application of paragraph (2) of this subsection if ... the interest on account of such claims of the holders of such claims in such property is of inconsequential value[.]" Paragraph 2 in turn provides that "[i]f such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2). Debtors argue that when these two provisions are read together, they mean that a class may not elect to treat their <u>claim amounts</u> as fully secured if the lien is of inconsequential value. Debtors argue that by invoking claim amounts, § 1111(b) permits courts to compare the allowed amount of the secured creditor's claim and the value of the lien when determining inconsequential value.

      The court is unpersuaded by debtors' arguments. The starting point in deciding how to determine "inconsequential value" is to look to the statute itself. <u>In re Miller</u>, 397 F.3d 726, 730 (9th Cir. 2005). Section 1111(b)(1)(B)(i) provides that an undersecured creditor cannot make a § 1111(b) election if "the interest on account of such claims of the holders of such claims in such property is of inconsequential value[.]" "'[I]nterest', as used in § 1111(b)(1)(B)(i), means the value of the security in which the creditor has a claim." <u>Baxley</u>, 72 B.R. at 197. "Such property" means the asset that secures the creditor's claim. Thus, in

order to determine "inconsequential value", Section 1111(b) directs that we compare the lien value to the asset value.  Nothing in Section 1111(b) suggests that it would be appropriate to compare the lien value to the total value of the creditor's claim.  The <u>Wandler</u> court's approach for determining "inconsequential value" is contrary to the plain language of § 1111(b), and the  bankruptcy court did not err in deciding not to follow <u>Wandler</u>.

<u>Conclusion</u>

Based on the foregoing, the bankruptcy court's order denying debtors' motion to disallow MidFirst's § 1111(b) election is affirmed.

DATED at Anchorage, Alaska, this 31st day of March, 2015.

/s/ H. Russel Holland<br>United States District Judge